UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SAUL NAJERA MACHUCA, | § § § | |
| *Petitioner,* | § § | |
| v. | § § | |
| MARY DE ANDA-YBARRA,<br>Field Office Director of Enforcement and<br>Removal Operations, El Paso Field Office,<br>Immigration and Customs Enforcement; | § § § § | |
| DAVID J. VENTURELLA,<br>Senior Official Performing the Duties of the<br>Director of U.S. Immigration and Customs<br>Enforcement; | § § § § § | EP-26-CV-00049-DCG |
| MARKWAYNE MULLIN,<br>Secretary of the U.S. Department of<br>Homeland Security; | § § § § | |
| U.S. DEPARTMENT OF HOMELAND<br>SECURITY; | § § § | |
| TODD BLANCHE,<br>Acting U.S. Attorney General; | § § § | |
| ACQUISITION LOGISTICS, LLC; and | § § | |
| WARDEN of ERO El Paso Camp East<br>Montana, | § § § | |
| *Respondents.* | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART

Petitioner Saul Najera Machuca ("Petitioner") challenges his ongoing detention by

United States Immigration and Customs Enforcement ("ICE") and seeks a writ of habeas corpus

under 28 U.S.C. § 2241.[1] Federal Respondents ("Respondents") oppose the Petition.[2]

---

[1] *See generally* Pet., ECF No. 1.

[2] *See generally* Resp., ECF No. 6; 2d Resp., ECF No. 9.

For the following reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART** and **ORDERS** Respondents to either provide Petitioner a bond hearing or release him from custody.

## I.    Background

### A.    Factual History

Petitioner is a citizen of Mexico who entered the United States without inspection in 2003.[3] In November 2025, immigration authorities arrested Petitioner in Skokie, Illinois.[4] The Government charged Petitioner with having entered the United States without inspection and therefore being subject to removal.[5]

Petitioner is currently detained at Camp East Montana in El Paso, Texas.[6] As far as the record reveals, the Government has neither (1) provided Petitioner a substantive bond hearing;[7] nor (2) entered a final administrative order of removal against Petitioner.[8]

---

[3] Pet. at 10–11.

[4] *Id.* at 11.

[5] An NTA is a charging document that "initiates a proceeding before an Immigration Judge." *See* 8 C.F.R. § 1003.13; *id.* § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

*See also* Pet. at 11.

[6] Pet. at 10.

[7] *Id.* at 4.

[8] In accordance with the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the parties were required to tell the Court if and when (1) "the Government grants the petitioner a custody redetermination hearing" and (2) "the Government issues an order of removal against the petitioner." A copy of that Standing Order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2026/04/Standing-Order-Immigration-Case-Updates-DCG.pdf.

Neither party has filed a status update with that information in it, so the Court proceeds under the assumption that no final order of removal exists and that Petitioner has not received a bond hearing.

### B.    Procedural History

On January 14, 2026, Petitioner filed a Petition for Writ of Habeas Corpus in accordance with 28 U.S.C. § 2241.[9] Petitioner claims that his ongoing detention violates the Fifth Amendment to the United States Constitution.[10] Respondents timely filed a Response opposing the Petition.[11]

## II.    Legal Standard

The United States Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[12] Detainees bear the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[13]

---

[9] Pet. at 1, 15.

[10] *Id.* at 13.

Because the Court concludes below that Petitioner is entitled to habeas relief under the Fifth Amendment, the Court need not address all claims contained in the Petition. *See, e.g.*, *Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises."); *Trotter v. Warden La. State Penitentiary*, 718 F. Supp. 2d 746, 756 (W.D. La. 2010) ("Petitioner is entitled to habeas relief on the claim. The court need not reach the other claims raised by Petitioner." (citation modified)).

[11] *See generally* Resp.

[12] *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).

[13] *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," with exceptions not relevant here, "he is in custody in violation of the Constitution or laws or treaties of the United States." (citation modified)).

Because habeas proceedings are civil in nature, each petitioner "must satisfy his burden of proof by a preponderance of the evidence." *See, e.g.*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

Under 28 U.S.C. § 2243, the Court shall "summarily hear and determine the facts, and dispose of the matter as law and justice require."[14] Because "the facts essential to consideration of the constitutional issue are already before the court," no evidentiary hearing is necessary. The Court may instead decide the Petition on the papers.[15]

### III.   **Discussion**

#### A.   **Jurisdiction**

The Court first considers whether it has subject-matter jurisdiction over the Petition.[16] Congress has divested district courts of jurisdiction to adjudicate certain immigration-related claims that might otherwise be cognizable under 28 U.S.C. § 2241.[17] The Court has already determined that it has subject matter jurisdiction to resolve analogous cases.[18] For the same reasons, the Court retains jurisdiction over this Petition.

#### B.   **Administrative Exhaustion**

The Court addresses whether Petitioner was required to exhaust administrative remedies before seeking relief in federal court. As a general principle, "[a] person seeking habeas relief

---

[14] *See* 28 U.S.C. § 2243.

[15] *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

[16] *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.").

[17] *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Bouarfa v. Mayorkas*, 604 U.S. 6, 18 (2024).

[18] *See, e.g.*, *Alvarado Luna v. Warden*, 3:25-CV-00565-DCG, 2025 WL 3787494, at *6–7 (W.D. Tex. Dec. 29, 2025), *overruled in part by Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Zamudio Sanchez v. Noem*, No. 3:25-CV-00403-DCG, 2026 WL 596133, at *6–7 (W.D. Tex. Mar. 2, 2026); *Gomes v. Grant*, No. 3:25-CV-00663-DCG, 2026 WL 1179617, at *2 (W.D. Tex. Apr. 21, 2026); Memorandum Opinion and Order Granting Petition for Writ of Habeas Corpus, *Goliakov v. Noem*, No. 3:25-CV-00613 (W.D. Tex. May 1, 2026), ECF No. 16.

must first exhaust available administrative remedies."[19] However, "when a petitioner's due process claim does not assert a procedural error correctable by the BIA, it is not subject to an exhaustion requirement."[20] In particular, "neither the Immigration Judge nor [the BIA] may rule on the *constitutionality* of the statutes that [they] administer."[21]

Petitioner raises a constitutional issue that administrative remedies cannot "correct."[22] Accordingly, Petitioner was not required to exhaust administrative remedies before filing the instant Petition.

### C.      Immigration and Nationality Act

Having been "presented with two grounds for resolving [this] case, one statutory and the other constitutional in nature," the Court considers the statutory ground first to "dispose of the case solely on that basis if possible."[23]

The Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi* foreclosed the possibility that Petitioner is detained under 8 U.S.C. § 1226(a) (and thus *eligible* for a bond hearing).[24] Accordingly, the appropriate detention authority must be § 1225(b)(1) or §

---

[19] *See Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018) (citing *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992) (per curiam)).

[20] *See Lopez De Jesus v. INS*, 312 F.3d 155, 162 n.47 (5th Cir. 2002) (first citing *Anwar v. INS*, 116 F.3d 140, 144 & n. 4 (5th Cir. 1997); and then citing *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993)).

[21] *See In re Rodriguez-Carrillo*, 22 I. & N. Dec. 1031, 1035 (BIA 1999).

[22] *See infra* Section III.D.

[23] *See, e.g.*, *Louisiana v. Pub. Invs., Inc.*, 35 F.3d 216, 219–20 (5th Cir. 1994).

*See also* Pet. at 12–13 ("The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.").

[24] In *Buenrostro-Mendez*, the Fifth Circuit suggested that the Government could apply either § 1226 or § 1225 to certain "aliens in the United States." *Buenrostro-Mendez*, 166 F.4th at 505 ("It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens."). Assuming (without deciding) that the Government could detain Petitioner under

- 5 -

1225(b)(2). [25] The Court need not decide which paragraph applies, because neither affords Petitioner the opportunity for a bond hearing.[26]

*Buenrostro-Mendez* does not resolve whether Respondents are detaining Petitioner in violation of the Constitution,[27] however, because "the Constitution, not statutes, determine[s] the minimum procedures that due process requires."[28] Petitioner could thus obtain a bond hearing if the Constitution requires the Government to provide one.

---

either authority, nothing suggests that the Government opted to detain him under § 1226. *See id.* at 498–508; NTA at 2.

[25] Both paragraphs direct the Government to detain an applicant for admission "throughout the completion of applicable proceedings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

A noncitizen is an applicant for admission if he (1) is present in the United States but has not been admitted; or (2) arrives in the United States. *See* 8 U.S.C. § 1225(a)(1). *See also id.* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); *id.* § 1182(d)(5)(A) (explaining that "parole of such alien *shall not* be regarded as an admission of the alien" (emphasis added)). Because Petitioner hasn't been admitted to the United States, he is an applicant for admission. *See generally* Pet.

[26] Neither paragraph "says anything whatsoever about bond hearings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297). Thus, the Fifth Circuit concluded that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." *Id.* at 500.

[27] *See, e.g.*, *Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026) ("*Buenrostro-Mendez* has no bearing on this Court's determination of whether a habeas petitioner is being detained in violation of her constitutional right to procedural due process." (citation modified)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee." (citation modified)).

[28] *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020).

### D.        Due Process Clause of the Fifth Amendment

The Court addresses Petitioner's claim that the Government, by detaining him without

the opportunity for a bond hearing, has violated his right to *procedural* due process under the

Fifth Amendment.[29] In *Mathews v. Eldridge*, the Supreme Court set forth a three-factor

balancing test to determine whether specific "procedures meet the essential standard of fairness

under the Due Process Clause."[30] The factors are as follows:

1) "The *private interest* that will be affected by the official action";

2) "The *risk* of an erroneous deprivation of such interest through the procedures used, and the *probable value*, if any, of additional or substitute procedural safeguards"; *and*

3) "The *Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[31]

---

[29] The Due Process Clause includes two distinct protections, and each provides an independent basis to challenge detention as unconstitutional. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("This Court has held that the Due Process Clause protects individuals against two types of government action."); *Cleveland Bd. of Educ.*, 470 U.S. at 541 ("The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology.").

*Substantive* due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746 (first quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); and then quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)).

*Procedural* due process is "meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *AARP v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (citation modified)). Even if "government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[30] *Mathews*, 424 U.S. at 334–35; *id.* (explaining that this analysis "does not extend to imposing procedures that merely displace congressional choices of policy").

[31] *Id.* at 335 (emphases added).

Applying those factors here, the Court concludes that this case is materially indistinguishable from others where this Court has found due process violations under *Mathews*:

1) Petitioner possesses a cognizable interest in his physical freedom because he lived at liberty in the United States for 22 years and has family and community ties to the country;[32]

2) A bond hearing would mitigate "the risk of an erroneous deprivation of [Petitioner's liberty] interest;"[33] *and*

3) The burden of administering such a hearing would minimally infringe on the Government's interest in using detention to effectuate removal proceedings.[34]

The Court finds that, by detaining Petitioner without the opportunity for a bond hearing, Respondents have deprived Petitioner of his right to procedural due process under the Fifth Amendment.[35]

---

[32] *See* Pet. at 10–11.

*Cf. Martinez-Santos v. Mullin*, 3:25-CV-00655-DCG, 2026 WL 1257459, at \*4 (W.D. Tex. May 6, 2026) ("Petitioner possesses a cognizable interest in his physical freedom because he lived at liberty in the United States for more than two years and has family and community ties to the country."); *Zamudio Sanchez*, 2026 WL 596133, at \*12 (concluding the same for petitioner who had lived in the United States for 30 years); *Gomes*, 2026 WL 1179617, at \*8 (22 years); *Melendez Rivera v. Bondi*, 3:25-CV-00646-DCG, 2026 WL 1231224, at \*4 (20 years).

[33] *Mathews*, 424 U.S. at 335; *see also Black v. Almodovar*, 156 F.4th 171, 194 (2d Cir. 2025) ("In the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention." (citation modified)); *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States*, 463 U.S. 354, 368 (1983))).

[34] *Compare Singh v. Andrews*, No. 25-CV-801, 2025 WL 1918679, at \*8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."), *with Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of \$88.19 per prisoner per day").

[35] This Court has not yet considered whether the nature and duration of immigration detention (as opposed to the interest-balancing facilitated by *Mathews*) would provide a distinct basis for relief under the Due Process Clause. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (requiring "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is

### E.      Relief

#### 1.      Bond Hearing or Immediate Release from Custody

Petitioner first asks the Court to either order his "immediate release" from custody or a "bond hearing."[36] The majority of courts appear to require a bond hearing before an immigration judge ("IJ") in analogous cases.[37] "[G]iven that the Court has found a *procedural* due process violation,"[38] the Court agrees that a bond hearing is an appropriate remedy.[39] The Court will order that a bond hearing be provided promptly.[40] If Respondents fail to provide the required individualized hearing, they must release Petitioner under reasonable conditions of supervision.[41]

---

committed"); *see also Zadvydas v. Davis,* 533 U.S. 678, 690 (2001) (applying *Jackson* in the immigration detention context).

Because the Court already determined that Petitioner is entitled to relief under *Mathews*, the Court need not decide whether he would be entitled to relief under *Jackson*.

[36] Pet. at 13–14.

[37] *See, e.g.*, *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 688 (W.D. Tex. 2025) (collecting cases).

[38] *See id.* at 687.

[39] *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts have "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775)).

[40] *Cf. Velasquez Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025).

[41] *See* 8 U.S.C. § 1231(a)(3) (requiring that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

### 2.    Attorney's Fees

Petitioner next requests costs and attorney's fees.[42] To recover fees against the

Government, Petitioner must demonstrate that the Government waived its sovereign immunity.[43]

Under the Equal Access to Justice Act ("EAJA"), attorney's fees "are not available in habeas

corpus proceedings like this one."[44] The Court therefore denies this request.

### 3.    Limitation on Future Detention

Petitioner finally asks the Court to prevent the Government from re-detaining him

"during the pendency of his immigration proceedings absent a substantial change in

circumstances."[45] Petitioner's release from custody is not guaranteed,[46] and the Court declines to

prematurely determine what circumstances would justify re-detention. The Government retains

the discretion to "commence proceedings, adjudicate cases, or execute removal orders," which

the Court lacks jurisdiction to review.[47] Because "due process is flexible and calls for such

procedural protections as the *particular situation* demands,"[48] the Court denies this request.

---

[42] Pet. at 14.

[43] *See Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023) ("Any waiver of the United States' sovereign immunity must be express, unequivocal, and any ambiguity therein strictly construed in favor of the sovereign.").

[44] See *Pineda v. Noem*, No. SA-25-CV-01518-XR, 2025 WL 3471418, at *6 (W.D. Tex. Dec. 2, 2025) (citing *Barco*, 65 F.4th at 785).

[45] Pet. at 14.

[46] *See supra* notes 39–41.

[47] *See* 8 U.S.C. § 1252(g) (providing in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter").

[48] *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (citation modified).

IV.     **Conclusion**

For the foregoing reasons, the Court concludes that it has jurisdiction over this matter and that Petitioner has established a violation of the Due Process Clause of the Fifth Amendment as applied to him.

The Court therefore **GRANTS** Petitioner Saul Najera Machuca's "Petition for Writ of Habeas Corpus" (ECF No. 1) **IN PART**.

The Court **ORDERS** Respondents to, by **Thursday, June 11, 2026**:

1) provide Petitioner with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk justifying Petitioner's continued detention;[49] or

2) release Petitioner from custody under reasonable conditions of supervision.

The Court further **ORDERS** Respondents to **NOTIFY** Petitioner and Petitioner's counsel **at least 24 hours** before the hearing or release (including the date, time, and location).

The Court further **ORDERS** Respondents to **NOTIFY** the Court **no later than Monday, June 15, 2026**, providing (1) detailed reasons for the bond hearing decision; or (2) confirmation of Petitioner's release.

In the event Petitioner is released, the Court **ORDERS** Respondents to **RETURN** Petitioner's property (including identification, immigration papers, cellphone, money, keys, and any other personal effects).

---

[49] To secure their release at a bond hearing, noncitizens typically bear the burden of demonstrating that they are neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8); *id.* § 1003.19(h)(3).

Where bond hearings are ordered as a habeas remedy, however, the burden shifts to the Government to show, by clear and convincing evidence, that the detainee poses a danger or flight risk. *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)).

The Court **DIRECTS** the Clerk of Court to **SUBSTITUTE** the following as Respondents in the above-captioned case:

1) Secretary of the U.S. Department of Homeland Security **Markwayne Mullin** in place of former Secretary Kristi Noem;

2) Acting U.S. Attorney General **Todd Blanche** in place of former Attorney General Pamela Bondi; *and*

3) Senior Official Performing the Duties of the Director of ICE **David J. Venturella** in place of former Acting Director Todd M. Lyons.[50]

**So ORDERED and SIGNED this 4th day of June 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[50] *Compare* Pet. at 1, *with* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name . . . . The court may order substitution at any time . . . .").